```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                   v.                        21 CR 603 (VEC)

5    TERRENCE WILLIAMS,

6                   Defendant.                Plea
     ------------------------------x
7
                                              New York, N.Y.
8                                             August 26, 2022
                                              11:15 a.m.
9

10   Before:

11
                          HON. VALERIE E. CAPRONI,
12
                                              District Judge
13
                              APPEARANCES
14
     DAMIAN WILLIAMS
15        United States Attorney for the
          Southern District of New York
16   BY:  RYAN FINKEL
          DANIEL G. NESSIM
17        Assistant United States Attorneys

18   ROTHMAN SCHNEIDER SOLOWAY & STERN, LLP
          Attorneys for Defendant
19   BY:  DAVID STERN

20
     Also Present:
21   Lisa Vega, FBI

22

23

24

25
```

1                    (Case called)

2                    MR. FINKEL:  Good morning, your Honor, Ryan Finkel and

3       Daniel Nessim for the government.  We are joined today as

4       counsel table by Special Agent Lisa Vega from the FBI.

5                    THE COURT:  Good morning, Mr. Finkel, Mr. Nessim, and

6       Agent Vega.

7                    MR. STERN:  Good morning, Judge, David Stern for

8       Mr. Williams.

9                    Mr. Williams means no disrespect by not rising.  He's

10      in a wheelchair.

11                   THE COURT:  Understood.

12                   Good morning, Mr. Stern.  Good morning, Mr. Williams.

13                   THE DEFENDANT:  Good morning.

14                   THE COURT:  You can take your mask off when you're

15      speaking.

16                   Mr. Williams, you and I are going to be the ones that

17      are mostly speaking.

18                   Mr. Stern, am I correct that your client wishes to

19      plead guilty?

20                   MR. STERN:  You are correct, yes.

21                   THE COURT:  Mr. Williams, your attorney has told me

22      that you wish to plead guilty.  Before that can happen, I need

23      to ask you some questions so I can be sure that you are

24      pleading guilty because you are guilty and not for any other

25      reason and that you fully understand the rights that you are

 1   giving up and the consequences of your plea.

 2            Ms. Caliendo, could you please swear in Mr. Williams.

 3            (Defendant sworn)

 4            THE DEPUTY CLERK:  Would you state your full name for

 5   the record and spell your last name.

 6            THE DEFENDANT:  Terrence Williams, W-i-l-l-i-a-m-s.

 7            THE COURT:  Mr. Williams, you can take your mask off

 8   if you feel comfortable doing so.

 9            Mr. Williams, you are now under oath.  What that means

10   is that if you answer any of my questions falsely, the

11   government can use your answers against you in a prosecution

12   for perjury or for making a false statement.  Do you understand

13   that?

14            THE DEFENDANT:  Yes, ma'am.

15            THE COURT:  How old are you?

16            THE DEFENDANT:  Thirty-five.

17            THE COURT:  Where were you born?

18            THE DEFENDANT:  Seattle, Washington.

19            THE COURT:  How far did you go in school?

20            THE DEFENDANT:  Four years college.

21            THE COURT:  Are you able to read and understand

22   English?

23            THE DEFENDANT:  Yes, ma'am.

24            THE COURT:  Are you now or have you recently been

25   under the care of a doctor or a psychiatrist?

```
 1              THE DEFENDANT:  I'm under the care for my leg, yes.

 2              THE COURT:  What happened to your leg?

 3              THE DEFENDANT:  Ruptured my Achilles.

 4              THE COURT:  Are you on any kind of pain medications

 5   for that?

 6              THE DEFENDANT:  No, ma'am.

 7              THE COURT:  Are you on any medication at all for that?

 8              THE DEFENDANT:  No, not right now.

 9              THE COURT:  Have you ever been treated or hospitalized

10   for any mental illness or any type of addiction, including drug

11   or alcohol addiction?

12              THE DEFENDANT:  No, ma'am.

13              THE COURT:  In the past 24 hours, have you taken any

14   drugs, medicines or pills or have you consumed any alcohol?

15              THE DEFENDANT:  No, ma'am.

16              THE COURT:  Is your mind clear today?

17              THE DEFENDANT:  Yes, ma'am.

18              THE COURT:  Your attorney has told me that you wish to

19   plead guilty.  Is that correct?

20              THE DEFENDANT:  Yes, ma'am.

21              THE COURT:  Have you had an opportunity to discuss

22   this case with your attorney, including the consequences of

23   pleading guilty?

24              THE DEFENDANT:  Yes, ma'am.

25              THE COURT:  Are you satisfied with Mr. Stern and his
```

1    representation of you?

2              THE DEFENDANT:  Up to now, yes.

3              THE COURT:  Up to now?

4              THE DEFENDANT:  Yes.

5              THE COURT:  So far so good?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Does either attorney have any doubt about

8    the defendant's competence to enter a guilty plea at this time?

9              MR. FINKEL:  No, your Honor.

10             MR. STERN:  I do not.

11             THE COURT:  On the basis of the defendant's responses

12   to my questions and my observations of his demeanor, I find

13   that he's fully competent to enter an informed guilty plea at

14   this time.

15             Mr. Williams, before I accept your guilty plea, I am

16   going to describe to you the rights that you have that you will

17   be giving up if you plead guilty.  Please listen carefully.  If

18   you don't understand any of my questions or if you just need an

19   opportunity to talk to your attorney, tell me that and I'll

20   stop and give you an opportunity to talk to Mr. Stern.  OK?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  Your attorney has said that you wish to

23   plead guilty.  You have the right to plead not guilty and to

24   persist in that plea.  Do you understand that?

25             THE DEFENDANT:  Yes.

1          THE COURT:  You have the right to be represented by an

2    attorney at trial and at every other stage of the proceedings.

3    If you cannot afford an attorney, an attorney will be appointed

4    to represent you without cost to you.  Do you understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  You have the right to a speedy and public

7    trial by a jury on the charges against you which are contained

8    in the indictment.  Do you understand that?

9          THE DEFENDANT:  Yes.

10          THE COURT:  If you went to trial, you would be

11    presumed innocent and the government would be required to prove

12    beyond a reasonable doubt that you are guilty.  You would not

13    have to prove that you are innocent at trial.  Do you

14    understand that?

15          THE DEFENDANT:  Yes.

16          THE COURT:  If you went to trial, you would have the

17    right to see and hear all of the witnesses and your attorney

18    could cross-examine the witnesses that the government calls.

19    Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  If you went to trial, your attorney could

22    object to the government's evidence.  You would also have the

23    right to present evidence and the right to compel witnesses to

24    come to court to testify in your behalf.  Do you understand

25    that?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  If you went to trial, you would have the

3     right to testify if you wanted to, but you could not be forced

4     to testify if you did not want to.  If you chose not to

5     testify, I would tell the jury they could not hold that against

6     you.  Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  If there were a trial, the jury would be

9     composed of 12 people and all 12 would have to agree that the

10    government had proven you guilty beyond a reasonable doubt

11    before they could find you guilty.  Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  If you were convicted at trial, you would

14    have the right to appeal the verdict.  Do you understand that?

15         THE DEFENDANT:  Yeah.

16         THE COURT:  If you plead guilty and I accept your

17    plea, you will be giving up all of the rights that I just

18    described, except your right to an attorney, and you will be

19    found guilty just based on your plea of guilty.  Do you

20    understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  We have to go through a number of other

23    things before I actually ask you how you plead and you tell me

24    you are pleading guilty.  Up until we do that, and you tell me

25    you're guilty and I accept your plea, you can change your mind.

1    After I accept your plea, that's it, it's final.  You don't get

2    to take it back at that point.  Do you understand that?

3            THE DEFENDANT:  Yes, ma'am.

4            THE COURT:  Mr. Williams, have you received a copy of

5    the indictment in this case that's numbered S3 21 CR 603?

6            THE DEFENDANT:  Yeah.

7            THE COURT:  Have you read the indictment?

8            THE DEFENDANT:  Yeah.

9            THE COURT:  Did you discuss it with your attorney?

10           THE DEFENDANT:  Yes, ma'am.

11           THE COURT:  You're offering to plead guilty to Count

12   One and Count Two of the indictment.  Count One charges you

13   with a conspiracy to commit health care fraud and wire fraud

14   and Count Two charges you with aggravated identity theft.

15           Do you understand what you are being charged with?

16           THE DEFENDANT:  Yes, ma'am.

17           THE COURT:  Mr. Finkel, what are the elements of these

18   two offenses?

19           MR. FINKEL:  Yes, your Honor.

20           Count One, the elements of Count One are:  First, the

21   government would need to prove that two or more persons in some

22   way or manner agreed to try to accomplish a common and unlawful

23   plan to commit the fraud crime here, health care fraud and wire

24   fraud; and, second, the defendant knew the unlawful purpose of

25   the plan and willfully joined it.

1              The elements of health care fraud, one of the objects

2    of Count One are:  First, the defendant knowingly executed or

3    attempted to execute a scheme or artifice to defraud a health

4    care benefit program or to obtain money or property owned by or

5    under the custody or control of the health care benefit program

6    by means of false or fraudulent pretenses, representations, or

7    promises; second, the false or fraud pretenses,

8    representations, or promises related to a material fact; third,

9    the defendant acted willfully and intended to defraud; and,

10   fourth, the defendant did so in connection with the delivery of

11   or payment for health care benefits, items, or services.

12             The elements of wire fraud, the second objective of

13   Count One are:  First, that the defendant devised a scheme to

14   defraud or to obtain money or property by material false or

15   fraudulent pretenses, representations, or promises, or

16   willfully participated in a scheme with knowledge of its

17   fraudulent nature; second, the defendant acted with intent to

18   defraud; third, that in advancing, furthering or carrying out

19   the scheme, the defendant transmitted any writing, signal or

20   sound by means of a wire, radio, or television communication in

21   interstate commerce or caused the transmission of any writing,

22   signal or sound of some kind by means of wire or radio or

23   television communication in interstate commerce; and, as to

24   Count Two, the elements are:  First, the defendant knowingly

25   transferred, possessed, or used; second, without lawful

10

1   authority; third, means of identification of another person;

2   and, fourth, during and in relation to a felony enumerated in a

3   particular statute as charged in Count One.  And, in addition,

4   your Honor, the government would need venue by a preponderance

5   of the evidence.

6           THE COURT:  Thank you, Mr. Finkel.

7           Mr. Williams, if you don't plead guilty, the

8   government would have to prove all of the elements that the

9   prosecutor just laid out beyond a reasonable doubt at trial.

10  Do you understand that?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  The maximum possible penalty for Count

13  One, which is the conspiracy count, is a term of imprisonment

14  of up to 20 years, a term of supervised release of up to three

15  years, a fine of up to $250,000 or two times the pecuniary gain

16  from the crime or two times the pecuniary loss from the crime,

17  whichever one of those three numbers is the largest, and a

18  mandatory $100 special assessment.

19          The maximum penalty for Count Two, which is aggravated

20  identity theft, is a period of two years' imprisonment which

21  must be consecutive to any other term of imprisonment, a term

22  of supervised release of up to one year, again a fine of

23  $250,000 or two times the pecuniary gain from the crime or two

24  times the pecuniary loss from the crime, whichever one of those

25  numbers is the largest, and a mandatory $100 special

1   assessment.  Do you understand that?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Supervised release means that you will be

4   subject to monitoring and supervision after you are released

5   from prison.  Do you understand that?

6              THE DEFENDANT:  Yes, ma'am.

7              THE COURT:  There are terms and conditions of

8   supervised release that you have to comply with.  If you don't

9   comply with those terms and conditions, you can be returned to

10  prison without a jury trial.  Do you understand that?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  If you violate the terms and conditions of

13  supervised release and you are sent back to prison, that new

14  prison term can be for all or part of the term of supervised

15  release.  You will not necessarily get credit for time that you

16  have already served on supervised release.  Do you understand

17  that?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  As part of your sentence I can order you

20  to pay restitution to any person or entity that was injured as

21  a result of your criminal conduct.  Do you understand that?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  In fact, as part of your plea agreement

24  you have agreed that you will pay restitution to the benefit

25  plan in the amount of $2.5 million.  Do you understand that?

1                THE DEFENDANT:  Yes, ma'am.

2                THE COURT:  You're pleading guilty to two different

3    counts in the indictment.  Do you understand that?

4                THE DEFENDANT:  Yes, ma'am.

5                THE COURT:  I have to impose a separate sentence on

6    each count.  Do you understand that?

7                THE DEFENDANT:  Yes, ma'am.

8                THE COURT:  In your case I have to run the sentences

9    consecutive.  Do you understand that?

10                THE DEFENDANT:  Yes, ma'am.

11                THE COURT:  So whatever your sentence is on Count One

12    and Count Two will run consecutive to each other.  Do you

13    understand that?

14                THE DEFENDANT:  Yes, ma'am.

15                THE COURT:  If I impose the maximum sentence on both

16    of the crimes, that would mean you would be facing a term of

17    imprisonment of 22 years.  Do you understand that?

18                THE DEFENDANT:  Yes, ma'am.

19                THE COURT:  If I accept your guilty plea and I adjudge

20    you guilty, that adjudication may deprive you of valuable civil

21    rights, such as the right to vote, the right to hold public

22    office, the right to serve on a jury, the right to possess any

23    type of a firearm, and the right to hold certain professional

24    licenses.  Do you understand that?

25                THE DEFENDANT:  Yes, ma'am.

13

1          THE COURT:  Mr. Williams, there are sentencing

2  guidelines that I have to consider in determining the

3  appropriate sentence in your case.  Do you understand that?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Have you talked to your attorney about how

6  the guidelines will apply in your case?

7          THE DEFENDANT:  No.

8          Yes, ma'am.

9          THE COURT:  I am going to have to calculate the

10  guideline range and consider that range in determining what

11  your sentence will be.  Do you understand that?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  But in addition to determining what the

14  guideline range is, I also have to consider the sentencing

15  factors that are set forth in federal law.  Federal law

16  requires me to consider a number of additional factors, things

17  about you and about the offense, in addition to the guidelines,

18  in determining what your sentence should be.  Do you understand

19  that?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  So even after I determine what the

22  guideline range is, these other factors could lead me to a

23  sentence that is either above or below the guideline range.  Do

24  you understand that?

25          THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  If your attorney or anyone else has

2    attempted to estimate or predict what your sentence will be,

3    their estimate or prediction could be wrong.  Do you understand

4    that?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  It's perfectly appropriate for you and

7    your attorney to talk about how your sentence will be

8    determined, but nobody can give you any assurance of what your

9    sentence will actually be.  It's my job to determine your

10   sentence, and I can't do that until I have done the other

11   things that I just described.  Do you understand that?

12         THE DEFENDANT:  Yes, ma'am.

13         THE COURT:  So nobody, not even I, can today predict

14   what your sentence will be.  Do you understand that?

15         THE DEFENDANT:  Yes, ma'am.

16         THE COURT:  Mr. Williams, I'm stressing this at some

17   length because it's important for you to understand that if

18   your sentence is different from what anyone has estimated or

19   predicted it will be or what you hope it will be, that will not

20   be a ground for you to withdraw your guilty plea.  Do you

21   understand that?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  If you are sentenced to prison, there is

24   no parole and therefore you cannot be released early on parole.

25   Do you understand that?

1              THE DEFENDANT:  Yes, ma'am.

2              THE COURT:  I've been given a copy of the plea

3    agreement which we have marked as Court Exhibit 1.  Did you

4    sign the plea agreement?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  Did you read it before you signed it?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  Did you discuss it with your attorney

9    before you signed it?

10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  Are there any agreements, promises or

12   understandings with the government that are not contained in

13   the plea agreement?

14             THE DEFENDANT:  No, ma'am.

15             THE COURT:  Has anyone threatened or forced you to

16   plead guilty?

17             THE DEFENDANT:  No, ma'am.

18             THE COURT:  You paused.  I understand that you are in

19   a position where all choices are not good choices, right?  Is

20   that where you find yourself right now?

21             THE DEFENDANT:  Yes, sort of.

22             THE COURT:  Has Mr. Stern talked you through

23   essentially what are your choices in this matter?

24             THE DEFENDANT:  Yes.

25             THE COURT:  You can go to trial, put the government to

1   its proof, or you can plead guilty to the deal that they have

2   offered you.  Do you understand that?

3             THE DEFENDANT:  Yes, ma'am.

4             MR. STERN:  Your Honor, I think he paused, and he will

5   correct me if I'm wrong, because in discussions with the

6   government, I was informed that they would potentially indict

7   him for charges which were even more serious.  He paused

8   because he may consider that to be a threat.  It's not legally

9   a threat.  It's a factual recitation of what might happen.

10            THE COURT:  Understood.

11            So you understand that yet another factor that went

12  into your analysis was whether if you decided to go to trial

13  that the government might add additional charges to what you

14  are already facing, correct?

15            THE DEFENDANT:  Yeah.  If I didn't sign the plea by a

16  certain time, I would get a new charge, so I take the plea.

17            THE COURT:  So you decided that that was in your best

18  interests, is that correct?

19            THE DEFENDANT:  Yes, ma'am.

20            THE COURT:  That was your decision, correct.

21            THE DEFENDANT:  Yes?

22            THE COURT:  Other than what's in the plea agreement,

23  has anyone promised you anything or offered you any inducement

24  to plead guilty?

25            THE DEFENDANT:  No, ma'am.

1    THE COURT:  Has anyone made a promise to you of what

2    your sentence will be?

3    THE DEFENDANT:  No, ma'am.

4    THE COURT:  One of the provisions that's in your plea

5    agreement is what's called a waiver of the statute of

6    limitations.  What that waiver means is that if for some reason

7    at some point in the future your plea is withdrawn or your

8    conviction is vacated, the government would be allowed to

9    charge you at that point in time in the future with any crime

10   that he could charge you with today, notwithstanding the

11   passage of time.  Do you understand that?

12   THE DEFENDANT:  Not really.

13   THE COURT:  It's kind of crazy and it is highly

14   unlikely to apply to you, but let me give it a shot.

15   Let's say that two years down the road there is a

16   decision from the Supreme Court that says the government's

17   theory on X, on what health care fraud was, on what aggravated

18   identity theft is, is wrong.  That might result in your

19   conviction being vacated.  You could say, wait a minute.  Their

20   theory was wrong.  I didn't really commit a crime.  Your

21   conviction then gets vacated.

22   What the government can do at that point two years

23   down the road is say, well, we are going to vacate that

24   conviction, but we could have charged you with a new crime.  So

25   since we are vacating the conviction that is a result of your

1    plea today, we are going to charge you with another crime.

2    Even if the statute of limitations had otherwise run on that

3    crime, because of that provision of the plea agreement, they

4    could charge you with that crime in the future.  Do you

5    understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Again, this comes up sometimes.  It is

8    very rare.  It's a very rare occurrence.  And it would only

9    happen if your conviction was vacated in the future.  Do you

10   understand that now?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  The plea agreement also contains an

13   agreement or a stipulation between you and the government

14   regarding the sentencing guidelines calculation that your

15   attorney and the assistants believe applies in your case.

16   That's an agreement between you and the government.  It's

17   binding on you and it's binding on the government.  So at the

18   time of sentence you can't say, oh, I disagree with that

19   guidelines sentencing, and they can't say they disagree with

20   that guidelines calculation.  Do you understand that?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  It's binding on both of you, but it's not

23   binding on me.  Do you understand that?

24             THE DEFENDANT:  Um-hum.

25             THE COURT:  I am going to do my own guidelines

1   calculation.  99.9 percent of the time I come up with the same

2   thing as the parties do, but it's not always the same.  Do you

3   understand that?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Another provision in your plea agreement

6   is that you are agreeing not to appeal your sentence or to

7   collaterally attack your sentence so long as I sentence you

8   within or below the guideline range that you agree applies in

9   your case.  So in your case that means so long as your sentence

10   is 145 months or less, you are agreeing not to appeal.  Do you

11   understand that?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  Mr. Williams, in order for me to accept

14   your guilty plea, I have to be convinced that you actually

15   committed these crimes.  Can you tell me what you did that

16   makes you guilty.  If you are going to read something, I am

17   going to ask you to read it slowly.

18          THE DEFENDANT:  From 2017 to 2021, I agreed with

19   others to commit health care fraud, health care wire fraud, by

20   helping other NBA or ex-NBA players to submit false claims for

21   treatment, most of which was not provided.  As a part of this

22   scheme I sent e-mails in which I pretended to be an employee of

23   a health care company and used the name of that person to try

24   to get others paid who I assisted or participated in the health

25   care fraud.

1            I know what I did was both wrong and illegal, and I

2    regret what I did.

3            THE COURT:  You said you were trying to get payment

4    for treatment that didn't occur.  That would be like medical

5    treatment of some type or dental treatment?

6            THE DEFENDANT:  Yes, ma'am.

7            THE COURT:  And you used the name of a real person

8    that wasn't yours when you were trying to accomplish this

9    scheme?

10           THE DEFENDANT:  I made up a name.

11           THE COURT:  You made up a name.

12           THE DEFENDANT:  Yeah.  The person didn't exist.  I

13   made up a name for a health care company.  So, yeah.

14           THE COURT:  Mr. Finkel, what's the aggravated identity

15   theft theory?

16           MR. FINKEL:  Mr. Williams used a person's actual name

17   who was an employee of the administrative manager of the plan.

18   I don't want to announce the person's name in open court.

19           If I could just have a moment with Mr. Stern?

20           THE COURT:  Yes.

21           MR. STERN:  Judge, if I could have a minute?

22           THE COURT:  Of course.

23           MR. STERN:  Judge, I think his position, he doesn't

24   remember the actual person, but it was an actual person whose

25   name -- that is, he doesn't know the name as he sits here now.

1          THE COURT:  He doesn't remember the name.

2          MR. STERN:  But he recognizes that was a real person.

3          THE COURT:  Mr. Williams, is that accurate?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  I don't take your plea, Mr. Williams, if

6    you didn't actually -- I am not asking you whether you remember

7    as you sit here whose name you used.  The question is, do you

8    agree and admit that you used the name of an actual person as

9    part of this scheme?

10          THE DEFENDANT:  Yeah.  I remember.

11          THE COURT:  Mr. Finkel, I think you put on the record

12   before what the government's theory on venue is.  But could you

13   put it on the record for Mr. Williams as well.

14          MR. FINKEL:  Yes, your Honor.  Among other things, one

15   of the defendant's coconspirators submitted and caused to be

16   submitted fraudulent claims to the plan from the Southern

17   District of New York.

18          THE COURT:  Mr. Williams, when you did all of this,

19   when you participated in the scheme to get payment for medical

20   treatment that didn't happen and you sent e-mails to facilitate

21   and to make that happen, did you know that what you were doing

22   was wrong and against the law?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  Did anybody threaten or coerce or force

25   you to do any of this?

1    THE DEFENDANT:  No, ma'am.

2    THE COURT:  Does either attorney want me to make any

3    further inquiry?

4    Mr. Finkel.

5    MR. FINKEL:  Your Honor, just one thing.  I believe

6    the Court touched on it and covered it in some substance, but

7    given its importance, the government would request that the

8    Court confirm that Mr. Williams understands that by pleading

9    guilty to Count Two, the Court cannot sentence him to a term of

10   imprisonment less than 24 months.  That is, there is a

11   mandatory minimum here of 24 months.

12   THE COURT:  Anything in terms of the allocution?

13   MR. FINKEL:  No, your Honor.  I thought you meant

14   overall.

15   THE COURT:  That's OK.

16   Mr. Stern, do you know of any valid defense that would

17   prevail at trial or any reason why your client should not be

18   permitted to plead guilty?

19   MR. STERN:  No, your Honor.

20   THE COURT:  Do you believe there is an adequate

21   factual basis on to support the plea?

22   MR. STERN:  Yes.

23   THE COURT:  Mr. Williams, let me just make sure that

24   you understand.

25   Count Two, which is the aggravated identity theft, the

1    use of a real person's name as part and parcel of this crime,

2    carries a mandatory term of 24 months in prison.  So even if I

3    gave you time served or no time on Count One, I have to impose

4    a sentence of at least two years on Count Two.  Do you

5    understand that?

6             THE DEFENDANT:  Yes, ma'am.

7             THE COURT:  Mr. Finkel, do you also believe there is

8    an adequate factual basis for the plea?

9             MR. FINKEL:  Yes, your Honor, thank you.

10             THE COURT:  Mr. Williams, this is the point where I am

11    about to ask you how you plead.  If you want to change your

12    mind, now is the time you have to do it.  Do you understand

13    that?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  Do you want to change your mind?

16             THE DEFENDANT:  No, ma'am.

17             THE COURT:  How do you plead to Count One, guilty or

18    not guilty?

19             THE DEFENDANT:  Guilty.

20             THE COURT:  How do you plead to Count Two, which is

21    the aggravated identity theft, guilty or not guilty?

22             THE DEFENDANT:  Guilty.

23             THE COURT:  Are you pleading guilty voluntarily and of

24    your own free will?

25             THE DEFENDANT:  Yes, ma'am.

```
 1              THE COURT:  You've also agreed the indictment contains
 2    a forfeiture allegation.  Mr. Williams, under the forfeiture
 3    allegation, the government has alleged that you are required to
 4    forfeit to the government the proceeds of the crime and
 5    property that was used to commit or facilitate the crime.  In
 6    your case your plea agreement provides that you are agreeing to
 7    forfeit the sum of $653,672.55.  Do you agree to forfeit that
 8    amount of money to the government?
 9              THE DEFENDANT:  Yeah.
10              THE COURT:  I have the feeling that you are thinking I
11    don't have that money, so, yes, sure I am going to forfeit it
12    to the government.  Is that kind of what your yeah meant?
13              THE DEFENDANT:  No, not in that context.
14              THE COURT:  You understand that means there is going
15    to be a judgment against you for that amount of money.
16              THE DEFENDANT:  Yes, ma'am.
17              THE COURT:  That plus the restitution.  Those are two
18    separate amounts.  Do you understand that?
19              THE DEFENDANT:  Yes, ma'am.
20              THE COURT:  So you are going to be responsible for
21    paying 2.5 million in restitution.  Together with whoever else
22    participated in the scheme, you are all jointly and severally
23    liable, so it's not everybody's responsible for 2.5 million.
24    Do you understand that?
25              THE DEFENDANT:  That's a group for 2.5?
```

1          THE COURT:  Correct.

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  It's everybody.  Everybody who gets

4   convicted of these crimes where we impose restitution will be

5   part of the pool of people that are paying off that amount.

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  Once 2.5 is paid, that's it.

8          THE DEFENDANT:  Yes, ma'am.

9          THE COURT:  You may pay a little of it or a lot of it.

10  Other people may pay a little of it or a lot of it.

11          I find that there is an adequate factual basis for the

12  plea, that Mr. Williams understands the rights he is giving up

13  and is waiving those rights knowingly and voluntarily.  I find

14  Mr. Williams understands the consequences of his plea,

15  including the potential sentence that may be imposed, and has

16  agreed to forfeit the proceeds of the crime.

17          Because I find the defendant's plea is entered

18  knowingly and voluntarily and is supported by an independent

19  factual basis for each and every element of the crimes charged,

20  I accept his guilty plea.

21          I direct that a presentence investigation be conducted

22  by the probation office and that a presentence report be

23  prepared.

24          Mr. Williams, you are going to be interviewed by the

25  probation department as part of the presentence investigation

1    process.  You can and you should have your lawyer with you for

2    that interview.  If you decide to talk to probation, it's

3    important that what you say is truthful and complete.  The

4    report the probation prepares is very important to me in

5    determining what an appropriate sentence is in your case.  So

6    it's important that I have complete and accurate information.

7    Probation is going to prepare a draft report which they will

8    provide to your attorney.  He will provide it to you.  Read it

9    carefully.  If anything in it isn't correct, make sure you tell

10   Mr. Stern so he can tell probation so the report can be

11   corrected before the time of sentence.  Both you and your

12   attorney will have an opportunity to speak on your behalf at

13   the time of sentence.

14            We are kicking sentence out a little bit further

15   because Mr. Stern has another obligation.  So the sentencing

16   date is January 25 at 2:30.  Your presentence submissions are

17   due January 11.  Those are 2023 dates.

18            Anything further, Mr. Finkel?

19            MR. FINKEL:  No, your Honor.  Thank you.

20            THE COURT:  Anything further from the defense,

21   Mr. Stern?

22            MR. STERN:  Yes, ma'am, two things.

23            One is, if probation could, I appreciate it if the

24   interview was done on a Friday, because that's the day I have

25   off during trial and that way I could attend.  I would rather

1    attend than ask someone else to attend on my behalf.

2           The other is, Mr. Williams is not getting adequate

3    health care.  He told you, and I know it's true, that he tore

4    Achilles in jail.  I am not saying that's anyone's fault.  But

5    he had surgery now I think about a month ago.  He was supposed

6    to have a follow-up visit with a doctor in two weeks.  That has

7    not taken place.

8           THE COURT:  He was supposed to have it two weeks after

9    the surgery.

10          MR. STERN:  Correct.

11          THE COURT:  So he's two weeks late.

12          MR. STERN:  Right.  He was told that the stitches were

13   supposed to be out in that time or his skin would begin to grow

14   over them.  That has not been done.  He was supposed to have

15   his cast changed so he could have more ability to work on his

16   muscles.  That has not been done.  He was supposed to be given

17   something in the jail to elevate his leg.  That has not been

18   done.  To the contrary, when he got an extra pillow, so he

19   could put his leg on it, that was taken away from him.  Also,

20   he needs to shower on what they call a disabled chair.  The

21   chair is not itself disabled.  It's for disabled people.  The

22   one they gave him had a broken leg.  And when he sat down, he

23   fell in the shower.

24          He has been reporting these things day after day.  I

25   have some of his e-mails but not all of them.  He is doing

1    everything in the way he is expected to do it and getting no

2    results.  He even met with the warden and told the warden, I am

3    not getting the treatment I need for my health care.  And it

4    really is not what we send people to jail for.  He is supposed

5    to be taken care of.  I can't do anything about it.  I am not

6    sure if you can or the government can.  But someone should do

7    something to make sure that he gets the health care he needs.

8              THE COURT:  Let me ask Mr. Finkel.  I am going to ask

9    you to talk to the prison and find out what the story is, both

10   on his follow-up visit to the surgeon and to getting

11   appropriate shower assistance, as well as something to elevate

12   the leg.  If you can get back to me next week, by Wednesday, I

13   will also reach out to the prison, but I'm hoping the AUSA can

14   perhaps get more information than I can.

15             MR. FINKEL:  We will certainly do that, your Honor.

16   As you know, there were issues with respect to Mr. Williams

17   several months ago.  The government was in contact with BOP

18   about them.  We had been in contact with the BOP about this.

19   We will follow up with the Court and Mr. Stern.

20             THE COURT:  Thank you.

21             MR. STERN:  So I'll get a copy, I take it, of what has

22   been found out?

23             THE COURT:  Absolutely.  Taking care of him -- MDC is

24   having lots of problems right now.  It doesn't shock me that he

25   hasn't made it back to the surgeon.  I take it the surgeon --

1    this was done out of the prison?

2              MR. STERN:  It was done outside, yes.

3              THE COURT:  He is going to have to be taken out of the

4    prison, and I know that that is always a problem because it

5    requires an unusual amount of staff at a time when staff is

6    short at the prison, so I understand their problems.  On the

7    other hand, he needs to get back to the surgeon.

8              MR. STERN:  I can just try to take care of one guy at

9    a time.  He is the one that I'm taking care of now, if I can.

10             THE COURT:  I totally understand.  I'll see you all in

11   January.  Thank you.

12             (Adjourned)

13

14

15

16

17

18

19

20

21

22

23

24

25